22 C. C. P. A. (Patents)

### DAY v. LONG et al.

### LONG v. DAY et al.

Patent Appeals Nos. 3449, 3450.

Court of Customs and Patent Appeals.
April 8, 1935.

Dike, Calver & Gray, of Detroit, Mich. (Elmer J. Gray, of Detroit, Mich., of counsel), for Day.

Swan & Frye, of Detroit, Mich. (George Rex Frye, of Detroit, Mich., of counsel), for Long.

Richey & Watts, of Cleveland, Ohio (H. F. McNenny, of Cleveland, Ohio, of counsel), for Evans.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

An interference was declared in the United States Patent Office between the application of Elmer C. Long, filed February 13, 1928, the application of Ray E. Day, filed March 1, 1926, and the application of Gordon E. Evans, filed January 30, 1926. The subject-matter of the interference is described sufficiently for the purposes of this case by count 5, which is as follows:

"5. A piston embodying a cup shaped head, two diametrically opposite spaced apart supports extending downwardly from the bottom of said head, two wrist pin bosses secured to said supports, two slipper sections separate from said head and forming thrust faces for said piston, and two struts rigidly connected with and diverging from the medial portion of each slipper section and connected with the two wrist pin bosses, said struts being carried by the head only through said supports."

Each of the parties filed a preliminary statement and took testimony. The party Evans, through his assignee, the Cleveland Trust Company, alleged conception and disclosure of the subject-matter of the invention on or about August 7, 1925, and reduction to practice as of December 3, 1925. The party Long, in his preliminary statement, alleged conception on or about the first day of April, 1921, and reduction to practice as of July 15, 1921. The party Day, in his preliminary statement, alleged conception of the subject-matter of counts 5, 6, and 7, in 1920, and a reduction to prac-

tice of the same in the same year. As to counts 1, 2, 3, and 4 of the interference, February, 1922, was alleged as the date of conception, and a reduction to practice during the summer of 1926.

Both the Examiner and the Board of Appeals awarded priority to the party Evans, the senior party. There is some difference of opinion between these tribunals as to various facts, but, in essential particulars, the conclusions of the Examiner and the Board of Appeals are in harmony.

The parties Long and Day have appealed. The record made by the parties is very voluminous, and has required much time for its consideration. No questions of law are presented, and the matter rests entirely upon the proofs which the parties have offered as to dates which should be awarded them for conception and reduction to practice, respectively. In what we have to say we shall discuss the case which each party has made, in turn.

The Board of Appeals awarded the party Evans a date of conception of November 16, 1925, and a constructive reduction to practice by the filing of his application herein involved as of January 30, 1926. In coming to this conclusion, the board discusses Exhibit 24 of Evans, which was an incomplete piston, lacking the head and some other features. There was some difference of opinion between the Examiner of Interferences and the Board of Appeals upon the matter as to whether this exhibit was a sufficient proof of conception. The board was of the opinion it was not, and we find ourselves in agreement with that conclusion. However, other pistons were made up according to certain drawings which were known as Exhibits 12 and 12a, and were tested, the test being completed on November 28, 1925. This date, November 16, 1925, therefore, was given to the party Evans as a date of conception, and, inasmuch as the pistons then made and tested seem to have embodied all the features of the subject-matter of the interference here, we agree with the board that conception is established, as of that date, by the party Evans. We are also of opinion that no weight may be given the fact that the party Evans did not testify. The record plainly shows that an effort was made to locate him, and that his whereabouts could not be ascertained. After Evans' date of conception, he proceeded with celerity to the filing of his application.

As to the party Long, the Board of Appeals was of the opinion that the counts of the interference would not read upon Long's earlier application, serial 602,660, filed November 22, 1922, and which is alluded to by appellant Long as his Case M. The disclosure in this earlier case was of a piston in which the struts supported the slipper sections of the skirt not in the manner shown by the application here involved, but in which the support was made by attachments of the struts near the ends of the segments of the skirt and not at intermediate points thereof; in other words, the structure as shown in the Case M pistons was, as the board has termed it, an "hour glass configuration." We find no error in this conclusion. The structures seem to be very different in principle.

The board further held that the party Long had failed to establish conception by the drawing of plans and the completion of pistons for the Holmes car in 1921, as alleged by him. However, the board was of opinion that Long had established sufficient facts to show a conception of the subject-matter of the interference in connection with certain pistons manufactured and sent to the Paige Motor Company in August, 1925. The board was of opinion, however, that there was not sufficient evidence to establish a reduction to practice of these Paige pistons. The Long application here in issue was filed on February 13, 1928, and the board was of opinion that, from the date of conception in August, 1925, until the date of filing, there was insufficient activity on the part of the party Long "to overcome the showing by Evans." Long, therefore, was given a date of August, 1925, for conception, and of February 13, 1928, for reduction to practice.

Long's claim to conception in 1921 depends largely upon the testimony of himself, Wilfred D. Fink, R. Gerald Ralls, Edward A. Heuman, and Arthur Holmes. To understand the exact situation, it is necessary to know something of the work which the party Long was doing. He was attempting to build up a business in the manufacture and sale of pistons, having spent the principal part of his life in this business. From April, 1920, until about the first of June, 1923, he was located at 4834 Beaubien street, in Detroit, Mich. At this and his other business locations he solicited and obtained business in making cylinders for many makes of cars. Drawings were made

up, from time to time, of various models of pistons, including improvements and changes of sizes and construction. Constant experimentation was going on along these lines. Drawings, as they were made, were numbered according to the particular number which was given some type of piston. These numbers were not taken numerically, but seem to have been haphazard in their selection, so that numbers did not continue chronologically. The drawings were not dated, and hence such drawings as were introduced by the party Long depend for their dates upon the memory of witnesses. As a consequence, the evidence furnished by such drawings is unsatisfactory and inconclusive. The witnesses were hazy in their recollection, and did not, by their testimony, clearly establish facts upon which a fixed determination with respect thereto could be readily and conclusively made. For instance, the witness Fink, who was employed by the party Long, and upon whose testimony Long largely relies, gives testimony as to the use of certain pistons which were claimed to be of the type here involved, but the exact character of which is, because of the absence of clear and convincing proof of dates, not satisfactorily shown. The witness Fink testified that he installed in a Franklin car of the party Long, a piston, which fact, it is claimed, constitutes proof of conception during the period while Fink was employed by Long, namely, in the period from July, 1921, to October, 1922. This piston, however, which is known as Exhibit 7, is shown on examination to have conformed in type to that shown by the party Long in his Case M application, which we have stated the board has held did not conform to the counts here in issue. It is true that the witness Fink testified that during the time he worked for the party Long he saw, at that place, a piston known as Exhibit 6, which seems to have been of the type which is the subject-matter of this interference. However, further proof as to the use or origin of this particular piston is not shown by the record, and this testimony is not sufficient, as we view it, to establish conception.

In reading Long's record, which is extensive, one is impressed with the thought that the party Long was constantly attempting to improve the character of his pistons, and that it is possible, and, perhaps probable, that he may have had a conception of the subject-matter here in issue, namely, of the so-called "strawberry box" type of piston, during his years of experimentation from 1921 to 1925. The burden, however, is upon him to establish this fact, and we feel, after a careful consideration of his record, that the facts shown are not sufficient to sustain the burden resting upon the party Long.

We come now to the proof of reduction to practice, as shown by the pistons furnished to the Paige Company in 1925, by Long. That such pistons were furnished, and that they embodied the subject-matter of this interference is, we think, fairly well established by the record. They were placed in Paige cars and were operated. The record, however, contains testimony to the effect that the tests were unsatisfactory. The witness G. Palardy, general foreman of the experimental department of the Graham Paige Motors Corporation, testified at length relative to these pistons received from the Long Company in the spring of 1925. He testified that these pistons were tested with dynamometer, and by road, tests, the pistons having been installed under his directions. The tests were supervised by an employee by the name of Bachle. These tests, according to Palardy, were unsatisfactory. The only other testimony in the record which has been called to our attention, which seems to be upon this point, is that of the witness William F. Porth, in charge of the experimental department at the Paige Company from 1914 to 1930. Mr. Porth depended entirely upon his memory for the facts to which he testified. He stated that he had conducted the tests of the Long pistons, and that he did not remember whether the tests were satisfactory or unsatisfactory. He was called as a witness for the party Long, and testified in answer to questions which were very largely leading in their character. The employee, Bachle, according to Porth's testimony, was deceased.

We are unable to find, in the record, any proof sufficient to establish a reduction to practice of the Long pistons of the particular type here involved until his constructive reduction to practice by the filing of his application. It is true that he made pistons from time to time, notably for the Chrysler Company, but whether they were satisfactory or not, upon a test, is not shown, and whether these were furnished before or after Evans' date of filing is not shown. The record is unsatisfactory in that respect, and while, as we have said, the general idea can be gathered from the record that the

party Long was in possession of the invention for several years before his actual filing, the difficulty lies in the fact that his proof does not satisfactorily establish the same, so that the court may conclude that the decision of the Board of Appeals is in error and should be reversed on the weight of the testimony in that respect. No proof of activity, during the critical period from the entry of Evans into the field until Long's filing, is shown. During that period, Long's work was largely experimental. Other patents during the interim were sought for upon pistons, differing in their construction. While there is no direct proof of abandonment, there is also little proof to establish any intention on the part of Long to proceed to patent upon the subject-matter here involved.

As to the preparation of a piston of the type here involved in 1921, it is a significant fact that the party Long testifies that he prepared such a piston and had it installed in a Holmes car which was then in the possession of the witness Fink. Long stated further that he had ridden in this car with Fink, and that the piston worked satisfactorily. However, when Fink was testifying, he failed to mention this circumstance, and was not asked about the same. Furthermore, it is shown by the testimony of the Day witness, Baustead, that the drawing known as Long's Exhibit 2, which is relied upon by Long as showing the construction here involved, and which it was claimed was put in the Holmes car engine, would not fit that engine, but was adaptable for but one engine, that of the Packard Six of 1925 or 1926.

Another significant circumstance concerns said Long's Exhibit 2. This is a photostat which shows in one drawing the subject-matter of the interference here involved. This drawing was produced by Long on the hearing, with the statement that he prepared the same in April, 1921, and found it, while conducting a search with the witness Ralls, a few days before the hearing, in his office. This drawing is relied upon strongly by the party Long. It is numbered "Long No. 99," and this number, in turn, appears in a small catalogue introduced in evidence, which was published about that time by Long. The drawing is not dated. It is a significant circumstance that this drawing does not seem to have been seen or known of by any other witness in the case at the time of the alleged conception in 1921, and seems to have slumbered peacefully in the book in which

it was found, from 1921 to 1930. The original of this exhibit was not found or accounted for. To ascribe to this drawing the importance which is claimed for it at this time is, in our view of the matter, not justified by this record.

It is seriously contended that in the fall of 1921 Long furnished the Holmes Automobile Company pistons of the type involved here for installation in their cars. However, Mr. Arthur Holmes, president of that company until it went into the hands of a receiver in 1922, was placed upon the witness stand by the party Long and stated that he did not know whether the Long Case P pistons were placed in the Holmes cars, but that definite information could be obtained from his employees, Smith, Whitman, and Davis, who had charge of that particular branch of the work. The whereabouts of these parties was disclosed by the witness, with the statement that full information could be obtained from them, particularly from Mr. Whitman. These parties, however, were not called as witnesses. It would seem that an attempt should have been made to obtain the presence of some of them. If, as a matter of fact, the Long piston of the type here involved was then used in the Holmes engines, it would have been an important circumstance.

Some effort was made, also, to show that Long installed pistons of the Case P type in a Mitchell car in 1924. These pistons, however, are shown by the testimony of the man who installed them, Joseph M. Cosgrove, to have been pistons with struts at right angles to the wrist pin axis, and not of the hexagonal type.

We therefore find ourselves in agreement with the finding of the Board of Appeals, as to date of conception and reduction to practice by the party Long.

The party Day, as has been stated, filed his application in the Patent Office on March 1, 1926. In the proceedings before the Patent Office, Day claimed that his conception of the subject-matter of the various counts of the interference is evidenced by what is known in the record as Day Exhibit 101. This exhibit was an aluminum piston in which the slipper portions were unattached to the head, and were supported and held in place by two iron rings in the interior of the piston, one of said rings being above the wrist pin bosses and the other below the same. This type of piston was manufactured by Day for commercial purposes during 1920, 1921, and 1922. We

agree with the Board of Appeals that this piston did not embody the principle involved in the counts of this interference, and that the counts do not read thereon. The particular reasons for this conclusion need not be stated here, for, as we read Day's brief and argument filed herein, his claims for priority are largely based upon a later piston, which is delineated by a series of photostats which are numbered Day's Exhibits 102–A, 102–B, and 102–C. One of these drawings, namely, Exhibit 102–A, bears upon its face the signature of Pierre Barnes, a patent attorney, and is dated by Barnes June 12, 1923. Day testifies that he exhibited the drawing to Barnes on that date, and that Barnes thereupon witnessed it at Day's request. The signature of Barnes is satisfactorily established by other proof, and the drawing plainly embodies the subject-matter of this interference. We are satisfied, therefore, that Day conceived as of said date of June 12, 1923, and he was therefore properly awarded that date for conception.

The serious matters, so far as Day's record is concerned, are his diligence and his reduction to practice. There is no proof in the record which establishes any reduction to practice until his constructive reduction on the date of his filing.

The principal contention of Day's counsel is that Evans did not conceive as of October or November, 1925, but that he must be confined to his filing date, not only for a reduction to practice, but for proof of conception. If Evans conceived in October, as found by the Examiner, or in November of 1925, as found by the Board of Appeals, then it is not seriously contended by counsel for Day that diligence has been shown by Day from that time until Day's filing date of March 1, 1926. The Board of Appeals took the view that from November, 1925, to March 1, 1926, ascribing to Evans a date of conception in November, 1925, Day had shown no diligence. As we have read the record, we are inclined to the view that no such diligence was established. It is true that Day was in a difficult position financially, during that period. However, he had, at various times prior to this critical period, received various sums of money, aggregating about $9,000, and during the period when diligence was chargeable to him he was able to employ the services of an attorney, Mr. Matheny, whom he consulted on January 25, 1926. We think it required a greater degree of diligence than

is shown during that period to substantiate the party Day's claims. As we have said, diligence, during that period, is not relied upon by counsel in the argument made in this court, it being rather admitted, by implication, that if Evans did conceive in November, 1925, the party Day is not entitled to priority.

We find no error in the decision of the Board of Appeals, and it is affirmed.

Affirmed.